Gibson, J.,
dissenting. This extraordinary legal proceeding in quo warranto is a creature of statute. Accordingly, in this, as in other cases of statutory construction, the issue is to determine the legislative intent.
Turning first to the applicable statutory provisions, consideration should be given to the relevant portion of Section 2733.02, Revised Code, which creates the cause of action and reads as follows:
“A civil action in quo warranto may be brought in the name of the state against a corporation:
<<* # #
“(D) When it has misused a franchise, privilege, or right *88 conferred upon it by law, or when it claims or holds by contract or otherwise; or has exercised a franchise, privilege, or right in contravention of law.” (Emphasis supplied.) The right to bring a quo warranto action in the name of the state against a corporation is clearly conferred where a corporation has exercised (1) a franchise, (2) a privilege, or (3) a right in contravention of law, unless such action is barred by the time limitation of Section 2733.35, Revised Code.
The pertinent portion of Section 2733.35, Revised Code, limiting the right to bring quo warranto against a corporation, provides:
“Actions in quo warranto against a corporation for forfeiture of its charter shall be commenced within five years after the act complained of was done or committed. No action in quo warranto shall be brought against a corporation for the exercise of a power or franchise under its charter, which it has used and exercised for a term of twenty years.” (Emphasis supplied.)
This being a limitation on the right to bring an action authorized by Section 2733.02, Revised Code, it should be construed strictly so as to preserve as much as possible of the right of action.
From the face of the two statutory sections, it is clear that Section 2733.02, Revised Code, authorizes the bringing of an action in quo warranto where a corporation has exercised a franchise, privilege or right in contravention of law, whereas Section 2733.35, Revised Code, bars such an action only where the corporation has exercised a power or franchise under its charter. Section 2733.35 does not expressly bar such an action where the corporation has exercised a “privilege, or right in contravention of law.”
The words employed in the 20-year statute of limitations indicate that the provision was enacted at a time when all corporations were chartered by special act of the General Assembly. This is borne out by the legislative history of the provision, which was enacted in 1838 (36 Ohio Laws, 68). Apparently, the General Assembly discontinued the practice of chartering corporations after the adoption of the Constituion of 1851. 12 Ohio Jurisprudence (2d), Corporations, 61, Section 16. Today, articles of incorporation for building and loan associations are *89 recorded as a routine matter by tbe Secretary of State after being authorized to do so by the Superintendent of Building and Loan Associations. Section 1151.02, Revised Code.
Ordinarily, a corporation may engage in any type of business activity. No special approval by the state is required as a condition precedent to extending the corporation’s business activities. There is no special public interest to protect. Thus, if a corporation engages in business activity beyond that set forth in its purpose clause, such activity is merely ultra vires. No harm generally is done to the public, which would justify a forfeiture of the activity if the corporation has engaged in such business over a long period of time. Obviously this is the kind of situation falling within the ambit of the limitation imposed by Section 2733.35, Revised Code.
A corporation might well, under its articles of incorporation, have the power to engage in certain business activities but, because the nature of the business requires prior state approval, be unable to exercise its corporate power for lack of such approval. For example, a bank, an insurance agency, a private employment agency, a securities broker, a real estate broker, a sewage disposal system company, a motor transportation company, and many other businesses and professions could not legally operate, even though incorporated, without prior state approval or licensure, unless under a so-called “grandfather” clause, which does not apply in this case.
In the instant ease, Chapter 1151, Revised Code, which provides for the regulation of state building and loan associations in the public interest, imposes conditions precedent and antecedent to the incorporation of such associations. The special approval of the Superintendent of Building and Loan Associations before such an association may be organized, or may establish more than one office or maintain branches, amounts to the grant of a privilege or a right. See Sections 1151.02 and 1151.05, Revised Code. Surely it would be unreasonable to construe Section 2733.35 so as to vitiate the regulatory purpose of Chapter 1151 and perhaps other statutory schemes for regulation of business activities affecting the public interest. In my opinion, this action concerns the unlawful exercise of a privilege, which must be conferred by the state, and as such the time limitation of Section 2733.35 is not applicable.
*90 Having determined that this action is not barred by the time limitation of Section 2733.35, attention should be directed to the statutory provisions relative to the establishment of more than one office of a building and loan association. Section 1151.05, Revised Code, provides:
“No building and loan association shall establish more than one office, or maintain branches other than those established before July 3,1923, except with the approval of the superintendent of building and loan associations previously had in writing.”
Clearly, except for those offices and branches established before July 3, 1923, the statute requires written state approval before any building and loan association may establish more than one office or maintain a branch for the transaction of its business.
Section 1151.05, Revised Code, does not expressly state what, if anything, is required in addition to a physical office facility in order to establish an office. Respondent Trumbull contends that it has not established an office, but that respondent Wayne acts as an independent contractor. The establishment of an office within the meaning of the statute, in my opinion, includes more than the opening of a physical office facility of the association itself. Where arrangements are made by an association for another to act on its behalf in carrying on certain of its building and loan activities at another location, an office is established even though the one performing such acts at the other location does so under its own name. Any other view would permit an association to do by indirection that which the statutes prohibit it from doing directly, viz., the establishment of another office without prior approval of the state. This would thwart the regulatory program by permitting such associations to operate anywhere within the state by the utilization of so-called independent contractors, without having secured the approval of the state for the establishment of such offices.
In the instant case, respondent Wayne clearly is carrying on some or all business functions of respondent Trumbull and is thus acting as an office of Trumbull, even though it operates under its own name. Accordingly, in my opinion, this court should oust the respondents from the relationship established between them.